UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SUZETTE FAGAN,<br><br>    Plaintiff,<br><br>v.<br><br>WAL-MART STORES, INC.,<br>WAL-MART STORES EAST, LP,<br>WALMART, INC., CENTENNIAL<br>SQUARE LLC, JOHN/JANE DOE 1-10<br>and/or ABC CORP. 1-10 (fictitious<br>individuals/entities)<br><br>    Defendants. | Civil Action No. 21-10363 (KM) (MAH)<br><br><br><br>REPORT AND RECOMMENDATION |

**I. INTRODUCTION**

This matter comes before the Court by way of Plaintiff Suzette Fagan's Motion to Remand to the Superior Court of New Jersey, Law Division, Middlesex County pursuant to 28 U.S.C. § 1447. *See* Mot. to Remand, May 13, 2021, D.E. 4. The Undersigned has considered the matter without oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth herein, the Undersigned respectfully recommends the District Court grant Plaintiff's Motion to Remand, and remand this matter to the Superior Court of New Jersey, Law Division, Middlesex County.

**II. BACKGROUND**

This civil action arises from a slip-and-fall at Walmart in Piscataway, New Jersey ("the Property"). *See* Notice of Removal, Apr. 28, 2021, D.E. 1 ¶ 18. Plaintiff Suzette Fagan seeks money damages for injuries sustained on July 3, 2018, when she fell on Defendants' premises due to their alleged negligence and carelessness. *See id.* Plaintiff commenced this action on April 28,

2020, in the Superior Court of New Jersey, Law Division, Middlesex County. *Id.*, Ex. A, D.E. 1-1, at 2-4. By way of an Amended Complaint filed on May 11, 2020 in the Superior Court of New Jersey, Law Division, Plaintiff brings negligence claims against Wal-Mart Stores East, LP ("Walmart"), the tenant of the Property; Wal-Mart Stores, Inc.; Walmart, Inc.; Centennial Square, LLC ("Centennial Square"), the landlord of the property; John Does 1-10; and ABC Corp. 1-10.[1] *See id.*, Ex. A, D.E. 1-1, at 5-7. Walmart filed a Substitution of Attorney on February 5, 2021, taking over Centennial Square's defense. Notice of Removal ¶ 13. Thus, Walmart and Centennial Square are now represented by the same attorneys. *Id.*

Plaintiff alleges, among other things, that Defendants were negligent insofar as they "created and/or permitted a hazardous, dangerous, and defective condition to exist on the premises" and that the condition "existed for so long" that Defendants "knew or should have known of the said condition." *Id.*, Ex. A, D.E. 1-1, at 5 ("Count One"). Plaintiff also maintains that Defendants "were responsible for maintenance" and negligently "creat[ed] a dangerous condition at the location of the subject fall." *Id.*, Ex. A, at D.E. 1-1, at 6 ("Count Two").

On April 28, 2021, Walmart removed the case to this Court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332.[2] *See* Notice of Removal ¶¶ 9-11, 17-28. Plaintiff is a New Jersey

---

[1] The Amended Complaint does not explicitly set forth the landlord-tenant relationship between Walmart and Centennial Square, but rather alleges that both Defendants owned and maintained the Property. *See generally* Notice of Removal, Ex. A, D.E. 1-1, at 5-7. However, Walmart asserts in the Notice of Removal that it leases the Property from Centennial Square. *See id.* ¶ 10. Plaintiffs do not dispute that assertion. Further, Walmart contends that it is the only proper defendant in this matter; according to Walmart, Wal-Mart Stores, Inc. and Walmart Inc. are incorrectly named, and Centennial Square has been fraudulently joined. *See id.*, Ex. D, D.E. 1-1, at 25.

[2] Defendant claims jurisdiction based on diversity of citizenship of the parties. Plaintiff is a New Jersey resident. *See* Notice of Removal ¶ 17. Walmart is a Delaware corporation with its principal place of business in Arkansas. *Id.* ¶ 9. Centennial Square is a New Jersey corporation with its principal place of business in New Jersey. *Id.* ¶ 10.

resident. *Id.* ¶ 17. Walmart is a Delaware corporation with its principal place of business in Arkansas. *Id.* ¶ 9. Centennial Square is a New Jersey corporation with its principal place of business in New Jersey. *Id.* ¶ 10.

Despite a lack of complete diversity among the parties, Walmart contends that subject matter jurisdiction exists because Plaintiff fraudulently joined Centennial Square as a defendant to prevent removal. *Id.* ¶¶ 10-16. As set forth in the Notice of Removal, Wal-Mart Real Estate Business Trust leased the Property from Centennial Square, and Walmart operated the Property pursuant to a separate sublease. *See id.* ¶ 10. According to Walmart, the terms of the lease stipulated that "maintenance of the store's interior was handled by the Lessee, Wal-Mart." *Id.* ¶ 10; *see also id.*, Ex. C, D.E. 1-1, at 21-23. Further, Defendants assert that Centennial Square was joined in bad faith, pointing to a signed stipulation of dismissal as to Centennial Square between Plaintiff and Walmart. Br. in Supp. of Defs.' Opp. to Pl.'s Mot. to Remand, June 7, 2021, D.E. 7, at 18. The stipulation provided that jurisdiction and venue would remain in Middlesex County Superior Court. *See* Notice of Removal, Ex. H, D.E. 1-1. However, it dismissed Centennial Square "without prejudice" and specifically noted that Defendants waived their "statute of limitations defense *if reinstatement [is] necessary.*" *Id.* (emphasis added). Nevertheless, Defendants assert that Centennial Square cannot be held liable for Plaintiff's injuries as a matter of law, and has been fraudulently joined. *Id.* ¶ 11.

Plaintiff now moves to remand this action to state court for lack of subject matter jurisdiction. *See* Pl.'s Br. in Supp. of Mot. to Remand, D.E. 4-1, at 1. First, Plaintiff alleges that Defendants failed to file their Notice of Removal within the appropriate timeframe. *Id.* at 3-4. Walmart was served with a copy of Plaintiff's summons and Amended Complaint on June 9, 2020. Walmart filed an answer on December 20, 2020. *Id.* at 4. Defendants did not file their notice of

removal until April 28, 2021, more than thirty days later.  *Id.*  However, Defendants rely on an email sent on May 6, 2020, in which Defendants requested that Plaintiff stipulate whether her damages are less than $75,000.  *See* Notice of Removal, Ex. I, D.E. 1-1, at 37.  Despite Plaintiff's refusal to cap damages at $75,000, Defendants contend that removal was timely because they did not know that the amount in controversy exceeded $75,000 until April 28, 2021, when they first learned that Plaintiff had surgery on August 10, 2020.  *See id.* ¶ 21; *see also id.*, Ex. J, D.E. 1-1, at 39; Pl.'s Br., D.E. 4-1, at 5.

Second, Plaintiff contends that Defendants cannot demonstrate diversity of citizenship, given that Centennial Square is a New Jersey corporation with its principal place of business in New Jersey.  *See* Pl.'s Br., D.E. 4-1, at 7-8.  Plaintiff submits that Centennial Square is a proper party to this lawsuit because Centennial Square was the commercial owner of the Property and "had a duty to maintain the premises . . . in safe condition."  Pl.'s Br., D.E. 4-1, at 10.

### III.   ANALYSIS

A party may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a).  "Where a complaint does not raise a question of federal law, a district court may properly exercise subject matter jurisdiction only if the amount in controversy exceeds the value of $75,000 and diversity exists among the adverse parties."  *In re Benicar (Olmesartan) Prods. Liab. Litig.*, 198 F. Supp. 3d 385, 386 (D.N.J. 2016) (citing 28 U.S.C. § 1332(a)).  To invoke diversity jurisdiction, "no plaintiff can be a citizen of the same state as any of the defendants at the time the complaint was filed and at the time of removal."  *Id.* (citing *Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 346 (3d Cir. 2013); *see also Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996)).

"Removal statutes 'are to be strictly construed against removal and all doubts should be resolved in favor of remand.'" *Peters v. Stop & Shop*, No. 13-6085, 2013 WL 5781199, at *2 (D.N.J. Oct. 25, 2013) (citing *Steel Valley Auth. v. Union Switch and Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987)). Upon the removal of an action, a plaintiff may move to remand the matter back to state court based on "(1) lack of district court subject matter jurisdiction or (2) a defect in the removal process." *Scott v. Estes Express Lines, Inc.*, No. 17-0963, 2017 WL 4268039, at *1 (D.N.J. Sep. 26, 2017) (citing *PAS v. Travelers Ins. Co.*, 7 F.3d 349, 352 (3d Cir. 1993).

### A. Untimely Filing of Notice of Removal

"An action that has been removed can be remanded to state court, pursuant to 28 U.S.C. § 1447(c), if the removal procedure was defective." *Peters*, 2013 WL 5781199, at *2. Any failure to file a notice of removal "within the statutory timeframe is sufficient grounds to remand an action to state court." *Id.* Under 28 U.S.C. § 1446(b), "if an initial pleading is removable, a defendant has thirty days after receipt of the initial pleading to file its notice of removal." *Id.* However, if the initial pleading is not removable, "a defendant has thirty days from receipt of an amended pleading, motion, order or "other paper" from which the defendant can first determine that the matter is removable" to file a notice of removal. *Id.*

Courts have used two approaches in resolving matters of timeliness: (1) the "bright-line" approach and (2) the "subjective-inquiry" approach. *Riconda v. US Foods Inc.*, No. 19-1111, 2019 WL 1974831, at *5 (D.N.J. May 3, 2019). Under the bright-line approach,

> If a Complaint does not plead specific damages, and does not otherwise make clear that the amount in controversy exceeds $75,000, the 30-day clock for removal does not begin to run until the defendant receives a document that clearly states the amount in controversy is more than $75,000.

*Id.* Using this approach, the relevant test is what the pleadings said regarding the amount in controversy, not what the defendants purportedly knew. *Id.*

5

Under the subjective-inquiry approach, the thirty-day period for removal begins once a defendant can "reasonably and intelligently conclude from the pleadings that the amount in controversy exceeds the jurisdictional minimum." *Carroll v. United Air Lines, Inc.*, 7 F. Supp. 2d. 516, 521 (D.N.J. 1998). Therefore, the initial pleading does not need to state the amount in controversy for the thirty-day period to start running. *Peters*, 2013 WL 5781199, at *2. "In the context of a personal injury suit between diverse parties . . . 'courts have held that allegations of severe injuries along with pain and suffering will alert the defendant that an amount in excess of the jurisdictional amount is at issue' and trigger the running of the thirty-day removal period." *Carroll*, 7 F. Supp. 2d at 521-22 (quoting *Turner v. Wilson Foods Corp.*, 711 F. Supp. 624, 626 (N.D.Ga. 1989)).

Although the Third Circuit has yet to adopt one approach over the other, that court has noted that a majority of the federal circuit courts of appeals have adopted the bright-line approach, and thus require an unequivocal statement of damages sought. *See Judon v. Travelers Prop. Cos. Co. of Am.*, 773 F.3d 495, 509 n.13 (3d Cir. 2014). However, the bright-line rule conflicts with the New Jersey Court Rule 4:5-2, which provides that [i]f unliquidated money damages are claimed in any court, other than the Special Civil Part, the pleading shall demand damages generally without specifying the amount." Further, courts in this district have generally used the subjective-inquiry approach in personal injury cases, in which allegations of severe injury are sufficient to alert a defendant to an amount in controversy in excess of the jurisdictional requirement. *See, e.g., Peters*, 2013 WL 5781199, at *2 (holding that allegations of "severe, permanent disabling injuries" and Plaintiff's "extensive medical treatment for her injuries" in a slip-and-fall case were sufficient to trigger the thirty-day removal period); *Wishnia v. Whole Foods Mkt., Inc.*, No. 19-6483, 2019 WL 1147931, at *3 (D.N.J. Mar. 12, 2019) (holding that a complaint

in a slip-and-fall case detailing the nature and severity of physical injuries provided sufficient notice to the defendant that the amount in controversy would exceed $75,000); *Ortiz v. Richmond Elevator Co.*, No. 15-672, 2015 WL 5945433, at *8 (D.N.J. Sep. 28, 2015) (holding that a complaint discussing the nature of personal injuries sustained from a malfunctioning elevator was enough to trigger the thirty-day period). Thus, this Court will proceed in evaluating this matter under the subjective-inquiry approach.

Here, Defendants filed their Notice of Removal on April 28, 2021, well more than thirty days after they were served with the Amended Complaint on June 9, 2020. Defendants' assert that removal was timely because they first learned that the amount in controversy exceeded the $75,000 jurisdictional amount on April 28, 2021, when Defendants learned of Plaintiff's August 10, 2020 surgery. However, the Amended Complaint claims that Plaintiff "sustained serious, severe and permanent injuries; suffered great pain and will continue to suffer great pain . . . was and will be compelled to expend large sums of money for medical treatment, and . . . was and will be prevented from attending to her business, employment and duties." Pl.'s Br., D.E. 4-1, at 5. It also alleges permanent injuries to Plaintiff's "head, body, neck, limbs and nervous system." *Id.* As in *Peters*, the Amended Complaint alleges "severe and permanent injuries" and the need to "expend large sums of money for medical treatment," and thereby placed or should have placed Defendants on notice that the amount in controversy exceeded the $75,000 threshold. Therefore, the Amended Complaint sufficiently triggered the thirty-day period. That conclusion is entirely consistent with the well entrenched principle that removal statutes are to be strictly construed against removal, and all doubts resolved in favor of remand. *See Peters*, 2013 WL 5781199, at *3. Accordingly, because diversity jurisdiction was apparent from the Amended Complaint, Defendants' notice of removal was untimely.

Although Defendants' Notice of Removal was untimely, for the sake of completeness, this Court will proceed to discuss the issue of fraudulent joinder raised by Defendants.

### B. Proper Joinder of Parties

"The doctrine of fraudulent joinder represents an exception to the requirement that removal be predicated solely upon complete diversity." *In re Briscoe*, 448 F.3d 201, 215-16 (3d Cir. 2006). That said, "[t]he removing party bears a 'heavy burden of persuasion' towards showing that a non-diverse party was fraudulently joined." *Mersmann v. Cont'l Airlines*, 335 F. Supp. 2d 544, 547 (D.N.J. 2004) (quoting *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992)). "Joinder is fraudulent where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendants or seek a joint judgment." *Brown v. Jevic*, 575 F.3d 322, 326 (3d Cir. 2009) (quoting *In re Briscoe*, 448 F.3d at 217). However, "[i]f there is even a *possibility* that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court . . . ." *Brown*, 575 F.3d at 326 (quoting *Batoff*, 977 F.2d at 851) (emphasis added). A claim is colorable when it is not "wholly insubstantial and frivolous." *Batoff*, 977 F.2d at 852. A case may not be removed based on diversity more than one year after commencement of the action, unless the court finds that the plaintiff acted in bad faith to prevent removal. 28 U.S.C. § 1446(c).

In making a determination on fraudulent joinder, the Court "must resolve all contested issues of substantive fact in favor of the plaintiff and must resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff." *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990). Although the Undersigned may consider limited "reliable evidence that the defendant may proffer to support the removal," the Court must be cautious not

8

to wade into an analysis of the merits of Plaintiffs' claims. *In re Briscoe*, 448 F.3d at 220. The threshold jurisdictional inquiry at hand "is far different from the summary judgment type inquiry." *Id.* "Indeed, even the standard of review applied on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is 'more searching than that permissible when a party makes a claim of fraudulent joinder.'" *Lappe v. Target Corp.*, No. 15-0007, 2016 WL 6305949, at *5 (D.N.J. Oct. 27, 2016) (quoting *Batoff*, 977 F.2d at 852). Accordingly, the Undersigned reviews the factual allegations of the Amended Complaint, record evidence submitted with the Notice of Removal, and applicable legal principles to determine whether Plaintiff's claims against Centennial Square are so "wholly insubstantial and frivolous" such that Defendants may properly invoke the subject matter jurisdiction of this Court. *Batoff*, 977 F.2d at 852.

### 1. Plaintiff's Claims Against Centennial Square Are "Colorable"

This Court finds that the negligence claims against Centennial Square are at least colorable. "The fundamental elements of a negligence claim are a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, injury to the plaintiff proximately caused by the breach, and damages." *Robinson v. Vivirito*, 86 A.3d 119, 124 (N.J. 2014). It is well-recognized in commercial leaseholds that "a landlord has a duty to exercise reasonable care to guard against foreseeable dangers arising from use of those portions of the rental property over which the landlord *retains control*." *J.H. v. R&M Tarliareni, LLC*, 216 A.3d 169, 180 (N.J. 2019) (quoting *Scully v. Fitzgerald*, 834 A.2d 1110, 1114 (N.J. 2004) (emphasis in original); *see also Michaels v. Brookchester, Inc.*, 140 A.2d 199, 201 (N.J. 1958) ("[I]t is now settled that the landlord owes a duty of reasonable care with respect to the portions of a building which are not demised and remain in the landlord's control.").

Provisions within a commercial lease that delegate responsibility for maintenance of all or parts of the demised property may function to shift the duty from the landlord to the tenant. *See Shields v. Ramslee Motors*, A.3d, 2020 WL 370514, at *5 (N.J. Jan. 23, 2020) (holding that the landlord had no duty to maintain a driveway because the operative lease agreement unambiguously delegated the duty to maintain the property to the tenant as if it were the "de facto owner"); *Geringer v. Hartz Mountain Dev. Corp.*, 908 A.2d 837, 843 (N.J. Sup. Ct. App. Div. 2006) (holding that the landlord owed no duty to maintain an interior stairway within the demised space "in light of the applicable lease provisions and the surrounding circumstances"); *McBride v. Port Auth. of N.Y. and N.J.*, 685 A.2d 520, 522 (N.J. Sup. Ct. App. Div. 1996) (holding that "there is no landlord liability" for personal injuries suffered on the leased premises "due to a lack of proper maintenance or repair, when the lease unquestionably places responsibility for such maintenance or repair solely upon the tenant"). However, a commercial landlord's liability may nonetheless extend "to cases in which the landowner [has] no control over the dangerous condition and the condition was not located on its property." *Monaco v. Hartz Mountain Corp.*, 840 A.2d 822, 831 (N.J. 2004). Liability extends because "whether [a commercial landlord] owes a duty of reasonable care toward another [person] turns on whether the imposition of such a duty satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy." *Lappe v. Target Corp.*, No. 15-0007, 2016 WL 6305949, at *4 (D.N.J. Oct. 27, 2016) (alterations in original) (quoting *Monaco*, 840 A.2d at 833). "That inquiry involves 'identifying, weighing and balancing several factors [including] the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution.'" *Monaco*, 840 A.2d at 833 (quoting *Hopkins v. Fox & Lazo Realtors,* 625 A.2d 1110, 1116 (N.J. 1993)); *see also Shields*, 2020 WL 370514, at *7-8 (applying *Hopkins* factors in

addition to control test). At bottom, "the test to determine a landlord's responsibility is highly situation-specific and fact-intensive, more suitable for a motion [for] summary judgment or trial than a motion to dismiss." *Lappe*, 2016 WL 6305949, at *5; *see also Shields*, 2020 WL 370514, at *8 (considering the liability of a landlord on appeal of an order granting summary judgment).

Here, Plaintiff alleges that Centennial Square had a duty to maintain the Property in a safe condition, and that its failure to do so may have caused the fall that resulted in Suzette Fagan's injuries. *See generally* Mot. to Remand, Ex. A, Counts One and Two, D.E. 4-4. For example, the Amended Complaint's well-pleaded allegations, while broad, assert that the negligence "created and/or permitted a hazardous, dangerous, and defective condition to exist on the premises" *Id.* at Count One ¶ 2. Plaintiff asserts that a question of fact remains over whether Centennial Square created or permitted the cause of the hazardous condition. Pl.'s Br. at 10.

**2. Defendants' Failure to Demonstrate Bad Faith**

The Defendants have failed to meet their heavy burden of demonstrating that Plaintiff lacked a good faith basis to name Centennial Square as a defendant. To prove Plaintiff's alleged bad faith intention, Defendants point to the Stipulation of Dismissal, characterizing it as Plaintiff's "mani[pulation of] the statutory rules to prevent removal" because Plaintiff refused to sign the stipulation until she received assurances that the matter would remain in state court. Br. in Supp. of Defs.' Opp. to Pl.'s Mot. to Remand, June 7, 2021, D.E. 7, at 19. On the other hand, Plaintiff argues that the dismissal is merely a courtesy so as to excuse the party less likely to be found liable, Centennial Square, from discovery until the facts indicate otherwise necessary. Pl.'s Br. at 9. While one may dispute the merits of Plaintiff's reasoning, Plaintiff's act of naming Centennial Square clearly does not rise to the level of bad faith. Although "unwarranted gamesmanship and intellectual dishonesty are not to be encouraged or rewarded . . . there is a certain amount of

procedural jockeying and strategy in any given litigation." *Campbell v. United Parcel Service, Inc.*, No. 19-12211, 2019 WL 5587349, at *4 (D.N.J. Oct. 30, 2019). As previously discussed, Plaintiff has colorable claims against Centennial Square, and it is not for the Court, on this motion, to wade into the merits of those claims.

Moreover, the Notice of Removal comes more than a year after the action in state court commenced. Yet Defendants did not move to dismiss Plaintiff's claims against Centennial earlier. Although Defendants urge the Court to grant removal based on equitable tolling under the "bad faith" exception in 28 U.S.C. § 1446(c), the Third Circuit has made clear that "equitable tolling may be appropriate if a litigant can demonstrate '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.'" *A.S. ex rel. Miller v. SmithKline Beecham Corp.*, 769 F.3d 204, 212 (3d Cir. 2014) (citing *Pace v. Diguglielmo*, 544 U.S. 408, 418 (2005)). Here, there is insufficient evidence of misconduct on the part of Plaintiff to support a finding of bad faith. Further, Defendants have failed to show evidence of an "extraordinary circumstance" preventing them from removing this action earlier.

If diversity jurisdiction did not exist at the time an action was filed, "a defendant cannot later remove it on diversity grounds unless the diversity jurisdiction was created 'by a voluntary act of the plaintiff, such as amendment of the pleadings or voluntary dismissal of the non-diverse defendant.'" *Brown v. Caterpillar, Inc.*, No. 15-02687, 2015 WL 4598778, at *1 (D.N.J. July 28, 2015) (quoting *Rubino v. Genuardi's Inc.*, 10-6078, 2011 WL 344081, at *5 (E.D.Pa. Jan. 31, 2011)). This is known as the "voluntary-involuntary rule." *Id.* The voluntary-involuntary rule is triggered by a plaintiff's "'clear and definite action, unequivocally express[ing] an intention not to proceed' against the non-diverse defendant." *Piacentile v. Thorpe*, No. 12-7156, 2015 WL 6757603, at *2 (D.N.J. Nov. 5, 2015) (quoting *Schmidt v. Capitol Life Ins. Co.*, 626 F. Supp. 1315,

1319 (N.D. Cal. 1986)). The voluntary-involuntary rule does not apply to cases in which parties are voluntarily dismissed without prejudice; parties dismissed without prejudice are still considered parties in the case for diversity purposes. *Id.*

Plaintiff contends that Centennial Square is a legitimate party because the stipulation is specifically "without prejudice" and permits reinstatement if necessary. Pl.'s Br. at 9. Defendants fail to show how Plaintiff unequivocally expressed a desire to abandon her claims against Centennial Square. The clear language of the stipulation shows that the parties specifically contemplated and agreed that Centennial Square could be reinstated. If Plaintiff chooses to reinstate litigation against Centennial Square, there would no longer be complete diversity and, thus, the Court would not have subject matter jurisdiction over this matter. Therefore, the voluntary-involuntary rule does not apply, and Defendants cannot remove on the grounds of diversity based on the Stipulation of Dismissal.

Ultimately, as removal statutes are to be strictly construed against removal and all doubts are to be resolved in favor of remand, the Court finds that Defendants have failed to meet their heavy burden of demonstrating fraudulent joinder.

**IV.    CONCLUSION**

For the reasons set forth above, the Undersigned respectfully recommends the District Court grant Plaintiffs' Motion to Remand. The parties have fourteen days to file and serve objections to this Report and Recommendation. *See* 28 U.S.C. § 636; L. Civ. R. 72.1(c)(2).

**Dated: June 29, 2021**

                                        *s/ Michael A. Hammer*
                                        **United States Magistrate Judge**